# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PYRAMID LAKE PAIUTE TRIBE OF INDIANS,

    Plaintiff,

v.

BUREAU OF LAND MANAGEMENT OF THE U.S. DEPARTMENT OF THE INTERIOR, AND U.S. DEPARTMENT OF THE INTERIOR, *et al.*,

    Defendants,

and,

FISH SPRINGS RANCH, LLC.,

    Defendant-Intervenor

Case No. 2:06-cv-1293-LDG (LRL)

**ORDER**

    The plaintiff, Pyramid Lake Paiute Tribe of Indians, has moved for an injunction pending appeal (#75), which motion is opposed by the defendants, Bureau of Land Management of the United States Department of the Interior, and the United States Department of the Interior (#80), and by the defendant-intervenor, Fish Springs Ranch, LLC. (#76).

    Previously, the Tribe moved for a preliminary injunction to enjoin any further implementation of the May 31, and June 23, 2006, Records of Decision that granted two

1  rights-of-way across federal BLM lands for water pipelines, pending a final determination
2  whether the BLM completed a lawful Final Environmental Impact Statement prior to
3  granting the rights-of-way.  On March 17, 2007, this Court granted the preliminary
4  injunction, including an injunction of any further construction or ground-disturbing activity
5  related to the burying of the proposed water pipelines.
6         Several days later, at a status conference on March 19, 2007, the BLM raised an
7  inquiry regarding the scope of the injunction as it related to monitoring of dust emissions on
8  those portions of the rights-of-way that had already been bladed, and as to that portion of
9  the rights-of-way in which a trench had already been dug and that presented a potential
10 hazardous condition if left open.  The BLM further re-iterated a previous argument that no
11 harm would occur if the injunction were limited to precluding the pumping of any water
12 through the pipeline prior to a final decision in this matter.  In response, the Court indicated
13 two concerns: (1) that it did not want a hazardous condition to exist, and (2) ensuring that
14 the defendants would not raise or rely upon any argument that this matter should ultimately
15 be decided in their favor because of the additional sums of money invested into the project
16 by the continuing construction.  The Tribe indicated that it did <u>not</u> oppose allowing further
17 activities related to dust control and safety.  Fish Springs then argued that the court should
18 merely enjoin the pumping of water, and that it would agree to such an injunction.  The
19 court indicated that such an injunction appeared appropriate, and the Tribe objected.  The
20 Tribe specifically argued that the defendants were attempting to 'piggy-back' relief from the
21 scope of the initial preliminary injunction on the basis of prior construction efforts.  The
22 Tribe further argued that the defendants should be precluded from any argument that
23 sought relief premised upon already-completed construction of the pipeline.
24        At a status conference on March 29, 2007, the court reiterated that construction
25 activity could continue.
26

Both the Tribe and Fish Springs have filed notices of appeal of this court's grant of the preliminary injunction. The Tribe now seeks an injunction, pending appeal, of any and all construction activity on the pipelines.

In considering the motion and the responses of the BLM and Fish Springs, the court notes that, in this matter, a narrowly-drawn preliminary injunction must address two distinct potential harms. The first is a potential environmental harm from the discharge of waste water in the Stead/Lemmon Valleys. The second is, as termed by the Tribe, "informational harm." That is, a potential harm exists that the continued implementation of the Records of Decision (through ongoing construction of the pipeline) will effectively result in a bureaucratic momentum such that, *if* the BLM is ultimately required to correct its FEIS and re-consider its decision to grant the rights-of-way in light of that corrected FEIS, then the fact that the pipeline has already been constructed through the requested rights-of-way will blind the BLM to the additional information provided in the corrected FEIS. Stated otherwise, a significant difference exists between a decision whether to grant a right-of-way to permit the construction of a water pipeline and a decision whether to allow water to flow through a pipeline that crosses public lands when a decision to *not* allow the water to flow means that the pipeline (and all efforts and sums expended to construct it, and the incurred disturbance to public lands) will be wasted. The Ninth Circuit has recognized that, in such a situation, "[i]f a project is allowed to proceed without substantial compliance with those procedural requirements, there can be no assurance that a violation of the . . . substantive provisions will not result." *Thomas v. Peterson*, 753 F.2d 754, 764 (9th Cir. 1985). As noted by the First Circuit, "[t]he difficulty of stopping a bureaucratic steam roller, once started, [is] a perfectly proper factor to take into account in assessing that risk [of irreparable harm], on a motion for a preliminary injunction." *Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st Cir. 1989). The court notes that, in *Natl. Audobon Soc. V. Navy,* 422 F.3d 174 (4th Cir. 2005), the Fourth Circuit imposed a modified injunction that permitted steps

prefatory to possible construction, but enjoined any actual construction of a proposed project.

An injunction that merely enjoins the pumping of water through the pipelines addresses only the potential for environmental harm.  An injunction that precludes any further construction addresses both the potential for harm to the environment and limits any further potential harm that additional construction will improperly impact the BLM's decision-making process.

The court would note, however, that during the arguments at the March 17, 2007, status conference, the Tribe indicated that it did not oppose further activity along the construction site intended to address dust control and safety.  As to safety, the defendants specifically noted the potential hazardous condition of the open trench, in some of which pipeline has already been laid.  Accordingly, the court will modify the injunction to enjoin any further construction activity that opens new trenches across public lands, but will permit such activity that addresses dust control and construction activity, including the laying of pipeline in existing open trenches, that will result in the filling in of existing open trenches.

Accordingly, for good cause shown,

THE COURT **ORDERS** that Pyramid Lake Paiute Tribe of Indian's Motion for an Injunction Pending Appeal is GRANTED as follows: The previously granted injunction is modified to enjoin any further construction activity that opens new trenches across public lands; provided, however, that such activity is permitted that addresses dust control and safety, including construction activity involving the laying of pipe in existing trenches and the filling in of existing open trenches.

DATED this ___27___ day of April, 2007.

_____
Lloyd D. George
United States District Judge

4